UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| GREG LEEB, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:17-cv-02780-SRC |
| CHARTER COMMUNICATIONS, INC. *doing business as* SPECTRUM | ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on plaintiff Greg Leeb's motion to compel entry of randomization protocol (134) and defendant Charter Communications, Inc.'s motion to clarify (138). The Court addresses each in turn.

Despite this Court's anticipation that the parties could reach an agreement on a randomization procedure to be used in selecting the 750-account sample addressed in this Court's Order, ECF 127, the parties have again stalemated. This time, they disagree about two issues. First, they cannot agree on whether the sample should include cellular or landline related data. Leeb argues the information should be limited to cellular data because "this entire case and class definition are limited to calls to cellular telephones." Charter argues "[e]liminating landline numbers from datasets is work typically performed by a plaintiff's expert witness in TCPA litigation." Be that as it may, Charter must produce only cellular data for the 750-account sample—the Court has already explained

1

the need to push this case along and, at this juncture, the lack of document production accounts for much of the delay.

Second, the parties dispute whether the 750-account sample should include "pre-recorded messages." Leeb "insists upon receiving data concerning calls made with prerecorded messages … because Charter has moved for judgment on the pleadings as to plaintiff's claims concerning use of an 'automatic telephone dialing system.'" Charter, meanwhile, suggests "plaintiff now says the 'random' sample should include *only* calls on which an artificial or pre-recorded voice was used." ECF 137, p. 3 (emphasis added). Charter goes on to note that "[the] Court, *at Plaintiff's request*, specifically ordered Charter's production to include 'those debt-collection calls made using (1) an unattended message, (2) TCN, or (3) LiveVox/NetTel." *Id*. (emphasis in original). And calls through LiveVox/NetTel, for example, "are typically live agent calls that do not use any artificial or pre-recorded voice." ECF 137, p. 3. The Court does not read, as Charter does, that Leeb's request meant he *only* wants data concerning calls made with prerecorded messages. In any event, the Court has already ruled on this issue and expects the parties to abide by it: the 750-account sample shall encompass "universal account-level records," which includes "LiveVox, NetTel, TCN, *and* any other vendor providing unattended messages." ECF 127 at p. 11 (emphasis added). Put simply, pre-recorded message data is

included, but not exclusive, to the extent that term is captured by reference to "LiveVox, NetTel, TCN, and other any other vendor providing unattended messages."[1]

Charter's motion to clarify raises what this Court counts as six additional "issues." ECF 138, pp. 1-8. First, Charter says it is confused about the meaning of "unattended message" as one of the categories of production referenced in the class allegations and this Court's order, ECF 127 at pp. 8, 11. Charter explains the term "unattended message" could mean a "voice message blast where the recipient has no option to speak with a live representative," or it could "refer instead [to] any call that can use an 'artificial or prerecorded voice … even if a recipient is also given the option to speak to a live agent." As an undefined term of his choosing, the Court construes the ambiguity against Leeb and holds that it means—for purposes of this case—the former definition. To be sure, had Leeb intended to track his class allegations with the "artificial or prerecorded voice" language used in the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227(b)(1)(A)-(B), he could have done so. Instead, he chose to rely on the undefined term "unattended messages," ECF 50 at ¶ 57. Serving as some guidance, Newton's Telecom Dictionary defines "unattended call" as one in which "no agent is available to serve the

---

[1] The parties' arguments, thus far, have not made clear if there is a meaningful difference between "unattended messages" and "prerecorded messages." Presumably they are the same in most situations. Charter notes in its briefing that LiveVox/NetTel, for example, uses calls that are "typically live agent calls that do not use any artificial or pre-recorded voice." It would be difficult to categorize that sort of call as an "unattended" message when a live agent is servicing the call—this, in comparison, to a call in which a recipient is essentially left listening to an unresponsive, computerized voice recording. In any event, the class allegations do not limit themselves to unattended messages; rather, the proposed class consists of "call[s] in connection with debt collection using (1) an unattended message, (2) TCN, **or** (3) LiveVox[Net/Tel]." (ECF 50, ¶ 57 (emphasis added)). Thus, to the extent TCN and/or LiveVox/NetTel use live agents or something other than "unattended messages," that information must be included in the 750-account sample.

3

call." NEWTON'S TELECOM DICTIONARY 1315 (30th ed. 2016). Again, for sake of expediency in this long-lingering case, that definition will be adopted moving forward to resolve any lingering ambiguity.

Second, Charter notes that "plaintiff has sued Charter Communications, Inc., in this action, [which] is a top-level holding company with many different subsidiaries … [including] legacy Charter[,] Time Warner Cable Inc.[,] and Bright House Networks, LLC[.]" Charter questions whether it is required to produced information pertaining only to legacy Charter, or also Time Warner and Bright House—noting both operate as companies separate from Charter Communications, Inc. Charter also notes that the vendors that allegedly called Leeb "were vendors used by legacy Charter (and then by post-merger Charter) … not customers with the [Time Warner] footprint." At this stage, Leeb has made no indication he intends to sue Time Warner or Bright House as separate subsidiaries, and the time for adding additional parties has passed, ECF 129. Nor has there been any suggestion of alter ego liability or agency that might otherwise implicate Time Warner or Bright House. Therefore, the Court finds only Charter and its own vendors are implicated.

Third, Charter raises concerns that it cannot produce certain discovery-related information by the October 4 deadline set forth in this Court's recent Order on the parties' competing motions to compel, ECF 127. Charter seeks clarification that "it is not being ordered to identify and produce all 'Category 1' evidence for every alleged wrong number called by October 4, but instead must only identify the types of evidence it will rely on by October 4, and produce such evidence applicable to the sample 750 accounts

4

on November 25, 2019." Charter must, at minimum, identify the types of evidence it will rely on by October 4, and produce such evidence on a rolling basis as it becomes available, up through the final discovery deadline of November 25, 2019.

Similarly, Charter says "the same problem applies to Categories 2 and 3 … because Charter cannot collect, review, and redact protected subscriber information from all responsive materials by October 4." Thus, Charter requests that it be permitted to identify responsive information by October 4 "with supplementation on a rolling basis thereafter." Again, Charter must, at minimum, identify relevant evidence by October 4, and produce such evidence on a rolling basis as it becomes available, up through the final discovery deadline of November 25, 2019.

Fourth, Charter points out that this Court's prior Order, ECF 127, "imposes several global limitations on the discovery requests, including for Category 3," to include that "each discovery request will be limited to information pertaining to calls made 'in connection with debt collection' using either 'an unattended message,' 'TCN,' or 'LiveVox.'" ECF 127 at p. 9. However, "the Order's final ordering clause directs Charter to 'respond to each interrogatory and request for production in Category 3 as originally written,'" citing ECF 127 at p. 19. At pages 9 and 10 of that Order, this Court explained how Category 1—not Category 3—was "in essence, contention interrogatories" that necessarily proportionately limited themselves to "those records that Charter would eventually seek to use in its defense during class certification." ECF 127, pp. 9-10. Thus, the Court intended to say in its final ordering clause that **Category 1** shall be responded to "as originally written," recognizing the built-in scope limitations, whereas **Categories**

5

**2 and 3** shall be responded to "with the addition limitation that each request is narrowed to seek information or documents predicated on: (a) outbound debt collection calls; (b) that are made by Charter via unattended message, TCN, or LiveVox." In other words, Categories 1 and 3 should have been and are now hereby switched in the final ordering clause.

Fifth, and finally, Charter requests "a modest extension of time to comply with all October 4 deadlines in the Court's Order through October 18." The Court denies that request. For purposes of responding to Categories 1 through 3, the Court has already explained its expectation that Charter identify what it can by October 4, with the expectation that it continue to produce relevant documents and information on a rolling basis up through November 25, 2019. That is not an onerous task, mindful—in particular—that the questions in those categories have been known to Charter since January 10, 2019, when Leeb first propounded them. As for the randomization process, that shall proceed forward immediately. Affected persons are excepted to be notified by October 4, in part, because those persons will need sufficient time to object—up through November 4, 2019. Charter has some time to produce the sampling data (through November 25, 2019), but has failed to sufficiently explain why the random drawing of 750 accounts cannot be done apace. Therefore, the deadlines remain as set in the Court's September 20, 2019 Orders, ECF 127 & 128.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Greg Leeb's motion to compel entry of randomization protocol (134) is **GRANTED**. The parties shall proceed forward with the randomization process as further defined herein.

**IT IS FURTHER ORDERED** that defendant Charter Communications, Inc.'s motion to clarify (138) is **GRANTED IN PART and DENIED IN PART** commensurate with the instructions and conclusions made herein.

So ordered this 30th day of September 2019.

_____
STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE